Stewabt, J.
Two questions are presented to this court, one, is the judgment of the trial court correct in fixing the distribution date of the trust as 10 years after the date of the death of the survivor of Henry J. Hinde and Jennie E. Hinde? and, two, was the Court of Appeals correct in its judgment affirming the judgment of the trial court, upon the ground that the trust company was not aggrieved by that judgment and, therefore, had no right to appeal?
As we have stated, the trial court adjudged that there shall be no distribution of the corpus of the trust until December 16, 1957, 10 years after Henry J. Hinde’s death.
The Court of Appeals was of the opinion that the trial court was in error in entering such a judgment, but that, since the trust company was not an aggrieved party and since no one of the beneficiaries appealed from the judgment of the trial court, it must be affirmed.
We are of the opinion that the Court of Appeals was correct in its conclusion that the Court of Common Pleas was in error with reference to the date for the termination of the trust.
It will be observed that in trust instrument No. 619 it is provided that after Jennie E. Hinde’s death the trust company shall hold and manage the trust property for a period of 10 years, and that at the end of that 10-year period the corpus of the trust shall be distributed to the then survivors of the groups to whom the income was being distributed, and in the same proportion. That provision would have required the distribution of the corpus of the trust on August 24, 1953, since she died 10 years before that date.
In trust instrument No. 620, it is provided that upon the death of Henry J. Hinde’s wife the entire trust property shall be transferred, held, managed and distributed in accordance with trust instrument No. 619, and that trust No. 620 shall thereupon terminate.
It follows that upon the death of Jennie E. Hinde on August 24, 1943, the entire trust property in trust No. 620 was required to be transferred to the trust company and held, man *383 aged and distributed in accordance with trust No. 619, and trust No. 620 thereupon terminated.
Although the corpus of trust No. 620 was not transferred to trust No. 619 until 1952, because of protracted tax litigation, nevertheless it had been transferred and become a part of trust No. 619 before the expiration of 10 years from the date of the death of Jennie E. Hinde. There remained no trust No. 620; it had merged with trust No. 619; and since, by the provisions of trust No. 619, it was to terminate 10 years after Jennie E. Hinde’s death, its termination date was August 24, 1953.
Some of the defendants contend that, since trust instrument No. 619 provides that the net income shall be paid to Henry J. Hinde during his lifetime, if he had lived for more than 10 years after the death of his wife it would have been impossible to terminate trust No. 619 at the end of the 10 years, thereby creating an irreconcilable conflict and showing an intention that the trust should not terminate until 10 years after the death of the survivor of the husband and wife. The answer to that contention is that such a situation creating the conflict did not occur, since Henry J. Hinde died in just a little more than four years after the death of his wife.
The provision in trust instrument No. 619 that the income from the trust shall be paid to Henry J. Hinde during his lifetime raises no question as to what would have been the situation if he had survived his wife for more than 10 years, for the simple reason that he did not so survive her. See Bear v. Millikin Trust Co., 336 Ill., 366, 168 N. E., 349, 73 A. L. R., 173.
It is a rule of law that, where there is a temporary impossibility for the fulfillment of directions in a trust, making the performance of a condition temporarily impossible, the trustee is under the duty to fulfill the condition after the temporary impossibility is removed. See Restatement of the Law of Trusts, 408, Section 165; and 2 Scott on Trusts, 832, Section 165.
If Henry J. Hinde had lived for more than 10 years after his wife died, it would have been the duty of the trust company to terminate the trust immediately upon his death and not 10 years thereafter, since it could not be terminated on the date specified in the trust. However, as we have said, that contingency did not arise and there was nothing which prohibited *384 the termination of the trust according to the terms of the trust instrument itself.
We come now to the second question, namely, was the Court of Appeals correct in its judgment affirming the judgment of the trial court, solely on the ground that it was without jurisdiction to entertain the appeal since the trust company was not aggrieved by the judgment below?
At the time of the institution of this action, Emma Farmer was the only survivor of the beneficiaries who were to receive three-fifths of the net income of the trust and three-fifths of the corpus thereof if she was surviving at the termination of the trust. Of the 11 nieces and nephews who were to receive two-fifths of the net income of the trust and two-fifths of the corpus at its termination, unless there were no survivors in the three-fifths class, in which case they were to receive the entire corpus, all but one are still living.
Emma Farmer was 80 years of age in 1953, 10 years after the death of Jennie E. Hinde, and will be approximately 84 years of age in 1957,10 years after the death of Henry J. Hinde.
Three of the 10 persons in the two-fifths group are children of Emma Farmer, and those four contend that the trust terminated in 1953, for, if so, Emma Farmer is entitled to three-fifths of the corpus and her three children are each entitled to one-tenth of two-fifths of the corpus. The remaining seven persons in the two-fifths group contend that the trust does not terminate until 1957, at which time the division of the corpus will be the same as in 1953 if all the beneficiaries are then living, but if Emma Farmer should then not be living, the entire corpus will be divided among the 10 persons in the two-fifths group.
Obviously, it is the duty of the trustee to take a neutral position as between these contenders, and, if the matter involved herein were simply a dispute between them, the judgment of the Court of Common Pleas would stand since no one of them took an appeal from it.
However, there is a more serious question involved.
The trustee and a majority of the advisory committee feel that the judgment of the Common Pleas Court is directly contrary to the intent and the express provisions of trust No. 619, and, having the expenses of the appeal underwritten by the dissatisfied beneficiaries, the trustee appealed.
*385 The general rule with reference to the right of a trustee to appeal is that where a trustee is a mere stakeholder, with no duty to perform other than to pay out funds to various claimants as ordered by a proper court, he has no right to appeal from such order even though he may think the court erred in making it. In such an instance he is not an aggrieved party. Estate of Ferrall v. Bank of America Natl. Trust & Savings Assn., 33 Cal. (2d), 202, 200 P. (2d), 1, 6 A. L. R. (2d), 142; Musser’s Estate, 341 Pa., 1, 17 A. (2d), 411.
However, a different rule governs where a judgment prevents the trustee from discharging his duties under the trust.
In 6 A. L. R. (2d), 152, the rule is stated as follows:
“Where the order or judgment affects or threatens the very existence, validity, or continuance of the trust, or prevents the trustee from discharging his duties under the trust, or threatens to defeat the purpose of the trust, or depletes the trust fund by allowance of unreasonable or unfounded claims against it, the trustee, though having no personal interest in the litigation, is not a disinterested party. In such case, he, in his fiduciary or representative capacity, is aggrieved by the judgment or order, and may appeal therefrom, whether the litigation is between the beneficiaries themselves or between the trust and third parties. ’ ’
In support of the above statement, cases are cited from the courts of 14 states and Hawaii.
In the Ferrall case, supra, it was held that a trustee may appeal from an order terminating a trust or dissolving a spendthrift trust, even though all the beneficiaries consent to immediate distribution of the trust estate. See Fletcher v. Los Angeles Trust & Savings Bank, 182 Cal., 177, 187 P., 425.
If a trustee may appeal from an order terminating a trust, it is a logical sequence to say that he may appeal from an order extending the date of termination of the trust.
The logic of the rule we have been discussing is that a trustee has a very personal interest in maintaining and executing the trust as directed by the trustor, and, regardless of any pecuniary effect upon the trustee, he is an aggrieved party where an order of the court affects the existence, validity or continuance of the trust, and where the order concerns matters of the *386 trust apart from the duties of the trustee as a mere stakeholder.
In the present case the judgment of the Court of Common Pleas is not concerned with the question as to who the beneficiaries are, or in what proportion they benefit. Those matters are stipulated, and, if all parties survive, their interests will be the same whether the trust terminated in 1953 or will terminate in 1957. However, the continuance or termination of the trust is a vital matter affecting the very existence of the trust itself, and in such a matter the trustee has an appealable interest.
Therefore, the judgment of the Court of Appeals is reversed, and the trust is ordered terminated as of August 24, 1953.

Judgment reversed.

Weygandt, C. J., Hart, Zimmerman and Bell, JJ., concur.
Matthias and Taft, JJ., dissent.